This Court has stated that because a defendant is giving up important constitutional rights in exchange for the government's promises, that the integrity of the system requires that the government strictly comply with its obligations under a plea agreement. In this case, the government intentionally breached its limited immunity agreement. It brought this breach to the attention of the court. It told the court that it had promised not to reveal information that occurred during a debriefing, but it wanted to do so anyway because it felt that the information supported the leader-organizer enhancement and it felt that it was obligated to bring that information to the court's attention. And so the government – I understand the government's position being that it felt that it had to present this information and that a fraud was being presented to the court. However, the government drafted the plea agreement. The government knew the content of Mr. Whitney's debriefing when it entered into the plea agreement. And the plea agreement allowed defense counsel to oppose that leader-organizer enhancement without triggering any release of this information. So the government, in essence, knowing what went on at that debriefing, bound itself in its plea agreement that it drafted. And it's my position, Your Honor, that the government should be bound by the strict terms of its agreement. And the rules state that if a breach is shown and it has been shown, that the harmless error rule does not apply in that instance. The other breach in this case was that the government promised in its plea agreement that it would not argue in support of a variance from the sentencing guideline range. Now, the government argued that Mr. Whitney, in committing a supervised release violation, was re-victimizing its victims. The government repeated that phrase a couple of times. And this was in response to Mr. Whitney's attorney's argument to the court that, hey, the court should sentence my client within the guideline range and shouldn't go off into this variance that was being suggested by the probation officer. So in response to that argument, the government submits that Mr. Whitney is going to re-victimize his victims. And that was a harmful breach. The subtext of arguing that Mr. Whitney is going to re-victimize his victims is that Mr. Whitney is a dangerous person and that the government supports this. Sotomayor Is this kind of a double speak for saying that he was going to involve these others in his plots? Waxman The re-victimize the victims? Sotomayor Yes. Waxman Involving the other co-defendants? Sotomayor Uh-huh. Waxman Your Honor, I'm not sure. I believe the comment about re-victimizing the victims referred to the identities that were stolen. Mr. Whitney's offense that sent him to federal court the first time involved identity theft. And I, as I understand the government's comments, the government is saying that if the court doesn't impose a long sentence, he's going to victimize these same people again. And in my position, Your Honor, is that that was something that was influential to the court and was suggesting to the court that a longer sentence is appropriate. And under the strict terms of the plea agreement, the government wasn't permitted to make that argument. The other issue is whether the court erred in imposing the leader-organizer enhancement. Kennedy Well, that's sort of tied up with this one. I mean, you may have two arguments, but one of them is that the government breached this agreement when it discussed leader-organizer. What's your other argument? Waxman The other argument simply is that setting aside the issue of breach, the court erred in imposing that leader-organizer enhancement by failing to show that Mr. Whitney was controlling others. The government has suggested that it can be authorized where there is evidence of managing the activities of a criminal enterprise. But I, as I understand the evidence before the court, it was Waxman's concern is what he did. And he provided information to Mr. Palkar, who was, I think, from the government's perspective, everyone agreed that he was the organizer of the enterprise. I'd like to reserve any additional time. I also note that the government provided additional authorities, and I would be requesting time to submit a supplemental brief after reviewing those. Scalia After reviewing what? I'm sorry. The government submitted some additional authorities, which I haven't had an opportunity to look up. So my request would be for me to do that. Scalia We'll let you know if we need that. Waxman Thank you. May it please the Court, counsel. I'm Samantha Spangler. I'm the assistant United States attorney that's been assigned to this case since its inception. And the first comment that I would like to make is about the alleged breach of the direct use immunity agreement. The first thing is that in this fast-paced environment of the judgment and sentencing hearing, I believe that the defendant had already breached the   and that the defendant had not brought it up at all. My concern was for the truth, and that's why I raised this. Kennedy A concern for the truth? Do you think that excuses an agreement not to use any information you learn from the defendant as a result of discussions? If you agree not to use that, does that mean that agreement only means if you discover he's told the truth? Spangler As long as he tells the truth at sentencing, yes, Your Honor. Kennedy Well, did it say that in the agreement? We won't use this unless you say the opposite at sentencing? Spangler I did not say those words in the plea agreement, the direct use immunity agreement. I did use words to that effect, though, as demonstrated in the supplemental excerpts of record. Page 2 of the direct use immunity agreement provides the first exception to this direct use immunity agreement involves the potential use of your client's statements for impeachment purposes, if it's no, that's not the right one. I'm sorry, it's the second paragraph. If the government determines that your client has knowingly given false, incomplete or misleading information or testimony or your client refuses to complete his full cooperation, the plea and cooperation agreement may be voided by the government, and the government may then use the information obtained in all debriefings. Kennedy But you didn't void the agreement, did you? Spangler No, I did not void the agreement. That's your remedy if you believe there's a violation by the defendant. Kennedy And you're not complaining that the information he gave you in the while cooperating was untrue. You're complaining that what he told the court at the sentencing hearing was untrue. Spangler That's correct, Your Honor. Kennedy So your second paragraph only allows you to void the agreement if he said something there that was untrue, and you're not alleging he did. Spangler That's correct, Your Honor. And in that circumstance, I would refer to the plea agreement's provisions that we've outlined in our brief respecting its reference to the direct use immunity agreement and the defendant's ability to or agreement to tell the truth. And Kennedy And to tell the truth when he's disclosing information to you. Spangler Well, in all court proceedings, though, Your Honor. The reason that I made my comment that the government is between a rock and a hard spot is that I was trying to navigate this difficult path between, on the one hand, honoring the defendant's statements in his debriefing session and, on the other hand, being honest with the court. Kennedy Well, nobody asked you to say anything. Did anyone ask you to say anything to the court? You know, you agreed with him that he would get a low sentence at the end of the guideline, wasn't it? Spangler That's a different issue, Your Honor. Kennedy Well, no, but why did you have to say anything to the court? You said you were concerned that you would have to say something that wasn't true to the court. I mean, you know, when you enter into an agreement on the plea and the court is going to keep that agreement or he's not going to keep it. Spangler Well, I didn't have any idea yet whether the court was going to honor the plea agreement or not. All the district court had said at the time that I made my comments was that the defendant had an impressive criminal history. That's all he had said. Kennedy Yeah. Then why was it necessary for you to address that issue? Spangler Well, um. Kennedy In other words, if you thought the only way you could address it is by breaching the plea agreement, you could have stood mute, right? Spangler Well, I did not believe I was breaching the plea agreement. Kennedy You didn't believe you were? Spangler No, I did not. And I think it's important. Kennedy Didn't you say at the sentencing virtually that you admitted that you were breaching the plea agreement? Spangler No, I found myself in a rock and hard spot with respect to the direct and use immunity agreement, Your Honor. And I think that there is a determination that needs to be made to distinguish those two agreements. Kennedy You mean legally they have a different binding effect on the prosecutor? Spangler No, I think that they have the same effect on the prosecutor. I think that it's important to distinguish the two arguments defense counsel is making with respect to, on the one hand, breach of the direct use immunity agreement and on the other hand, breach of the plea agreement. The one thing that I'd like to say about the truthfulness, and my concern was for the truth throughout this proceeding, and that includes on the alleged breach of the plea agreement. When I took issue with defense counsel's allegation that the defendant was an ineffectual thief. Here's a quote from the Reid case that I've cited in my gum sheet. Any time a prosecutor is aware that the court is about to impose sentence based on incomplete or inaccurate information, the prosecutor has the duty to inform the court of the correct or missing information. And that's under the Reid case, U.S. versus Reid. Kennedy That's unless, no, but that's unless the prosecutor made a promise not to do so. Spangler No, that doesn't have anything to do with the prosecutor's comments. Kennedy Well, suppose, and I've seen these plea agreements, you make a plea agreement that says government agrees to stand muted sentencing. Spangler Well, I didn't make that agreement, though. Kennedy No, I'm just giving a hypothetical, right? I've seen, though, there are plea agreements like that, right? Spangler Yes. Kennedy All right. So the government agrees to stand muted sentencing. And then defense counsel, not him, but somebody else, you know, goes on a great big harangue about, you know, says lots of things that, in the prosecutor's mind, misrepresent the record, misrepresent what was proffered at the, you know, the sessions with the agency and so forth. But you've made the, you've made the agreement to stand mute. You think in that situation, then, under Reed, you can get up and say, no, that's all wrong because he told me at the, you know, at the proffer sessions also. Spangler I think that it would be the prosecutor's obligation to correct the record in front of the district court. Kennedy Well, can't you say, can't you say, were I free to do so, I would correct the record, but, you know, the plea agreement. The plea agreement binds the government to stand mute. Spangler I understand that, Your Honor. Kennedy Is that what you should say? Spangler I think that that would be the correct approach. And I would remind the Court that the distinction here is that the government agreed not to recommend, or agreed to recommend the bottom of the sentencing guidelines, and I did so. Kennedy Well, you also agreed not to use the information made at the proffer on the guideline offense level calculation, right? Spangler This is true, yes. And I didn't actually use any of the information Mr. Whitney gave me during the proffer session. I merely alluded to it. Kennedy What do you mean? You mean alluding to it is not the same as using it? Spangler Yes. That's exactly what I mean. Because I did not, I didn't cite jot and tittle of information that he had disclosed during the deep reconcession. Kennedy Was that a plea agreement not to disclose jot and tittle? Spangler No. I'm sorry, Your Honor. That was merely a hyperbole. But the thing is that I merely said that this puts me in a rock and a hard, between a rock and a hard spot, and I didn't Kennedy Because he gave me information to the contrary. Spangler Because he gave me information to the contrary. I did not state what information he gave me that was specifically contrary, because defense counsel did not object at the sentencing hearing to anything. I mean, he even, he even accepted the PSR's calculations with respect to the guidelines. He just disagreed with the upward departure and he agreed with the role enhancement. But because he didn't object, I think that raises the specter of both the Robertson v. Cannell case that I've cited both to in the gum sheets. And that's, for example, in Robertson. Robertson failed to object in district court to the government's comment, which he now claims is a breach. Because Robertson failed to raise the breach of the plea agreement in the district court, we will not consider his claim of breach for the first time on appeal. In the Cannell case, the appellate court, this court, applied the plain error analysis to the alleged breach. I see that my time is up, Your Honor. Kennedy What's the date of those cases? Spangler The Cannell case is the 2008 case and the Robertson case is the 1995 case. Kennedy It's hardly the kind of thing that ought to be in a... Spangler I'm sorry, what? Kennedy Hardly the kind of thing that should be in a 28J letter. Spangler You're right. It should have been in my brief. And I apologize to the Court for not doing so. Kennedy Do you think it would be appropriate to waive that because it wasn't raised in a timely manner? Spangler No. I think that it's appropriate to consider it because defense counsel and I both discussed whether harmless error or plain error applied. And this is just additional authority that supports the government's contention that plain error analysis does apply. Kennedy Okay. Thank you. Spangler Just a couple points, Your Honor. On the issue of breaching the limited immunity agreement, and there was a corresponding provision in the plea agreement which also says that that information can't be used. That information, that was clearly brought to the attention of the Court that a breach had occurred. The government said, I bound myself not to use that information. I'm bound not to reveal this information, but I'm going to reveal it anyway because I think there is a reason that obligates me to do it. So the Court was aware, that was brought to the attention of the Court. So I think for that reason, I think that the plain error doesn't apply as to that error. And I do think on the other breach, I think that it was, I think it was, the error was prejudicial in the suggestion to the Court that this guy is so guilty that he's going to continue to re-victimize unless the harsh sentence recommended by the Probation Department is not given. So I think that there was prejudice, and I think there's an issue of the perception of the fairness to the Court and a perception of the public in these proceedings where the government is, in essence, breaching its plea agreement. Thank you, Your Honors. Thank you very much. The case to be adjourned will be submitted.
judges: Fletcher, Reinhardt, Tashima